19774. JOHNSON *v.* TIFTON BUICK COMPANY.

DECIDED JULY 9, 1929.

*E. L. Smith,* for plaintiff in error. *W. H. Burt,* contra.

LUKE, J. On October 17, 1928, an execution in favor of Tifton Buick Company and against W. L. Johnson was levied on certain cattle, hogs, and "100 acres of corn, velvet beans, and peas, more or less, in field," as the property of the defendant. The levy did not show in whose possession the property was found. On October 30, 1928, J. W. Johnson filed his claim to said property. During the trial the plaintiff in fi. fa. dismissed the levy upon the cattle and hogs, leaving the hundred acres of corn, etc., as the subject-matter of the suit. The jury found the property subject to the execution; the court overruled the claimant's motion for a new trial, based upon the usual general grounds and four special grounds; and the claimant excepted to that judgment.

The following is the evidence pertinent to the issues involved in the case. O. F. Tarver testified that he levied the fi. fa. upon property located on what is known as the Lovett Johnson Place, and that he was familiar with that place; that a negro farming on said place said he was working for Mr. Lovett Johnson, but "did not say whether Lovett Johnson was in charge for his father or for himself." Here the plaintiff in fi. fa. introduced in evidence an execution of $340 principal, in favor of Tifton Buick Company and against W. L. Johnson, dated October 17, 1928, and based upon a judgment rendered May 14, 1928. J. W. Johnson, the claimant, testified: that the crop levied on was located on the same property known as the Lovett Johnson Place and described in the deed to him, dated January 7, 1928, from his son W. L. Johnson; that the son owed a long-loan company $7,500 on the place, and wanted him to get, if he could, $4,000 which the son owed him; that the son made a quitclaim deed to him to the place on which said crops were grown, in consideration of $100 cash and said $4,000; that he told his son that he "would try to run the place," and would pay the son $30 a month to look after it for him; that witness ran the place during the year 1928, and furnished his son

money with which to pay for the labor; that said $4,000 owed witness by his son was made up of loans and advances made to the son during the last four or five years; that witness never took notes for any of the money so loaned and advanced to the son and did not keep any record of it, but knew that it amounted to as much as $4,000; that witness never dealt with loan companies, but understood that some of them would lend twice what farms were worth; that he paid his son $50 a month from January to May, as shown by checks, but that he did not know why he had no check for the month of March; that he did not return the place for taxes in 1928 because the loan company had better papers than himself; that when he bought his son's equity in the place, which contained 375 acres, there was a $7,500 loan on it, but that it seemed that loan companies lent twice as much on a place as they could get out of it. This witness further testified: "When my son, Lovett Johnson, made this deed to me, he was in bad shape. He owed more than he could pay, and his creditors were suing him. I just failed to produce this deed I got in January for record until the date this judgment was obtained, that is May 14, 1928." Witness introduced in evidence checks aggregating $2,951.29, to show in part the alleged advancement of $4,000 to his son; also a quitclaim deed, dated January 7, 1928, from W. L. Johnson to J. W. Johnson, reciting a consideration of $100, describing the Lovett Johnson place, and recorded May 14, 1928.

Plaintiff in fi. fa. introduced in evidence a certified copy of the adjudication in bankruptcy of W. L. Johnson on November 3, 1928; also certified copies of the tax-returns of both Johnsons for the year 1928, showing that W. L. Johnson, and not J. W. Johnson, returned the Lovett Johnson place for taxes that year. The tax-collector testified that the board of equalizers notified W. L. Johnson that the taxes on said place would be raised, but that he made no answer and interposed no objection.

■ It can not be gainsaid that there was ample evidence to sustain a verdict for the claimant had the jury seen fit to find one. On the other hand, it was peculiarly the province of the jury to pass upon the credibility of the witnesses in the light of the facts and circumstances of the case. Some of the facts deducible from the evidence are these: The transaction was between very near relatives. The son was insolvent when the deed was made to his

father. The equity for which the father paid at least $100 appeared to be of no value. The deed which was made January 7, 1928, was not recorded until May 14, 1928, the very day on which plaintiff's judgment was procured. The $4,000 alleged to have been advanced by the father to the son was very inadequately accounted for. · The son returned the property for taxes for the year 1928. The verdict has evidence to sustain it, and the trial judge has approved the verdict. We do not think that the judge erred in overruling the general grounds of the motion for a new trial.

■ The first special ground of the motion for a new trial complains that the court erred in allowing the witness O. F. Tarver to testify that a negro farming on the Lovett Johnson place said he was farming for Lovett Johnson. The objection was that this was an "effort to show possession of the crops levied on by hearsay evidence." Clearly this ground shows no reversible error, since the claimant himself testified that his son, Lovett Johnson, was in possession of the place and farming it for claimant.

■ The second special ground complains that the court sustained an objection to the following question and the answer elicited thereby: "Mr. Barnes, as a sworn officer, are you not required to take tax-returns on property which was owned on January 1st, and not that which might be acquired at a later date; is that not your duty as a sworn officer?" Waiving the fact that counsel failed to state the reply he expected the witness to make to the question, we are quite sure that, under the record, claimant's case was not hurt by the ruling of the court. Furthermore, the plain provision of the statute answers what counsel sought to elicit from the witness.

■ The third special ground complains of the following charge of the court: "On the question of possession, I charge you that possession of personal·property is prima facie evidence of title. You are to determine the fact of ownership of the personalty levied upon as between defendant in fi. fa., W. L. Johnson, and the claimant, J. W. Johnson, from all the facts and circumstances of the case, including the fact of possession, the claim or lack of claim by W. L. Johnson, or J. W. Johnson, to property levied upon, and to lands upon which crops grown as evidenced by tax-digest, and the exercise or control over the farming operations on lands on which crops were grown for the year 1928." It is first contended that

this charge was not adapted to the evidence for the reason that the only evidence showing possession of the crops in defendant was that of Tarver, who testified that he found the property levied on on "the north side of the highway on what is known as the Lovett Johnson place." The father himself testified that Lovett Johnson was farming the place for him at a wage of $30 per month; and this criticism is not good.

It is next contended that since the court failed to instruct the jury that he who owns land on January 1st must return it for taxation, the foregoing charge unduly emphasized the importance of the certified copies of tax-returns of the Johnsons, especially in view of the fact that the son had title to the property on January 1, 1928. We agree with counsel that the court's charge was inapt in this regard, but do not think that the error is of sufficient gravity, in the light of the record, to warrant a new trial.

■ The fourth special ground complains that a long excerpt from the charge of the court, dealing principally with badges of fraud, was not warranted by any evidence. The record refutes this contention. In this same ground complaint is made that the following excerpt "was prejudicial to the claimant:" "The rights of creditors should be favored by the court, and every remedy and facility afforded them to detect, defeat and annul any effort to defraud them of their just rights." Under the criticism made of this excerpt last quoted, we are only called upon to say whether or not the charge is abstractly correct. Since it is a direct quotation from the Civil Code (1910), § 3216, the question must be answered in the affirmative.

The evidence supports the verdict; none of the special grounds show reversible error; and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*